THE ROSEDALE, etc.

SMITH, as Ex'r, *v.* MCKILLOP.

*(District Court, S. D. New York.* December 20, 1884.)

1. COLLISION—STEAMER AND SAILING VESSEL.—CHANGE OF COURSE—RULE 23—SAILING VESSEL IN FAULT—OFF COURSE.

Where a sloop was beating up the East river past Blackwell's island, and the steamer R., coming down, undertook to keep out of the way by passing very near the westerly shore, leaving abundance of room for the maneuvers of the sloop, and the sloop, when upon her starboard tack, ran into the steamer, being, at the time, at least from three to five points off her course, which was by the wind, *held,* that the sloop was wholly to blame for the collision, for either intentionally changing her course by paying off in the direction of the steamer, or for negligently allowing the sloop to pay off much in excess of what was necessary in tacking, and that this fault was the direct cause of the collision.

2. SAME—STATE STATUTE.

The state statute requiring steamers to keep in the middle of the East river does not apply above the southerly end of Blackwell's island. The course of the steamer close to the westerly shore *held* prudent and justifiable.

In Admiralty.

*Hyland & Zabriskie,* for McKillop.

*Butler, Stillman & Hubbard* and *W. Mynderse,* for Smith and the Rosedale.

BROWN, J. On the thirteenth of April, 1883, as the steamer Rosedale was coming down the East river, abreast of Blackwell's island, at the rate of from 16 to 18 miles an hour, the sloop Alida was seen

beating up with a strong flood-tide, the wind being about N. E. The course of the river there is about N. N. E., and the channel only from 600 to 800 feet wide. When in the vicinity of Seventieth street, the sloop, being then upon her starboard tack, and heading towards the New York shore, struck the steamer on her port wheel-house, causing some damage to both vessels, for which these cross-libels were filed. The sloop, when first seen from the Rosedale, was heading towards the New York shore. Shortly afterwards, she tacked and headed towards the Blackwell's island shore, when the Rosedale, according to her own testimony, ported and went as near to the New York shore as possible, shaping her course within less than 100 feet of the shore; and, according to her witnesses, she kept within that distance of the west shore, expecting thereby to keep out of the way of the sloop. After reaching near the Blackwell's island shore the sloop again tacked towards the New York shore, and ran upon the steamer, as above stated.

The sloop's witnesses say that the place of collision was not more than one-third of the distance across from Blackwell's island. A disinterested witness, who was in the pilot-house of the steamer, confirms the steamer's testimony; and I must hold that the steamer, at the time of collision, was near to the western shore. They state, also, that the sloop, at the time of the collision, was heading a little down river; while the sloop's witnesses say that she was heading about directly across the river. There was a good sailing breeze, and the sloop was going at the rate of at least four knots. She could easily sail within from five to six points of the wind. Her witnesses say that in coming about, the sloop is liable to pay off from one to two points from her true course. Admitting this, it does not explain why the sloop should have been suffered to head directly across the river, as her own witnesses admit, or somewhat down river, as the steamer's witnesses assert. This was at least from three to five points off from her course, and much in excess of her liability to pay off in tacking. Besides, as the collision was on the western side of the river, the sloop, if properly handled, would have picked up and reached her true course some time before coming to the place of collision. I cannot find any explanation of the course and heading of the sloop prior to the collision compatible with ordinary care or skill in navigation on her part. Had she kept her proper course on her starboard tack, as required by rule 23, no collision would have happened. The captain of the steamer supposed the sloop would go astern; she would have done so had she been kept up to the wind on her proper course, as she might and ought to have kept, and as the steamer had a right to suppose she would be kept. The statutory rule that requires steamers to keep in the middle of the East river applies only "between the Battery * * * and Blackwell's island." 4 Edm. St. 60. In going very near to the west shore, the steamer violated no rule or regulation of navigation, and I am inclined to

think adopted, as she claims she did adopt, the most prudent course. She left plenty of room for the sloop, and had a right to assume that the latter would keep her proper course in beating. As the sloop's failure to do so was the real cause of the collision, and no definite fault contributing to the collision appears on the part of the steamer, I am constrained to dismiss the libel with costs in the first case, and to decree for the libelants with costs in the second.